IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMMIE L. PHILLIPS )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE RAYMOND CORPORATION, )<br>)<br>Defendant. ) | No. 99 C 2152<br><br>Judge Mark Filip |

MEMORANDUM OPINION AND ORDER

Sammie Phillips ("Plaintiff" or "Phillips") filed suit against The Raymond Corporation ("Defendant" or "Raymond") alleging that Raymond was liable for his injuries stemming from a workplace accident involving Raymond's Model 31i forklift. Raymond moves for summary judgment on the basis that, on the record assembled, Plaintiff cannot establish a prima facie case of negligence or strict liability, particularly given that the Court excluded the testimony of Plaintiff's putative expert, John Sevart. (D.E. 113 at 1.) As explained below, Raymond's motion for summary judgment is granted in part and denied in part. Specifically, the Court grants summary judgment with respect to Plaintiff's negligence claims and his strict liability claim premised upon Raymond's failure to warn. The Court denies the motion with respect to Plaintiff's strict liability claim premised upon a design defect under the risk-utility test employed in Illinois law.

I.      FACTUAL BACKGROUND

    A.      Local Rule 56.1

The relevant facts are taken from the proper portions of the parties' filings under Local

Rule 56.1 ("L.R. 56.1"). As is the practice in this district, the Court only considers those facts that are presented in conformity with L.R. 56.1. In addition, where a party has offered a legal conclusion or legal argument in its Rule 56.1 factual filings, the Court will not consider the statements. *See, e.g., Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000) ("[A] movant's 56.1(a) statement should contain only factual allegations. It is inappropriate to allege legal conclusions.").[1]

B. Factual Background

During early 1996, Phillips was employed at the Jewel Food Stores warehouse in Melrose Park, Illinois. (D.E. 122 ¶ 1.) On April 2, 1996, Phillips was operating a Model 31i forklift manufactured by Raymond in connection with his duties as a "put away man." (D.E. 114 ¶¶ 5-6.) The Model 31i is a stand-up, rear-entry forklift, meaning that it had a doorless opening in the back of the forklift through which the driver of the forklift would pass when entering or leaving the machine. (*Id.* ¶¶ 5, 8, 12.) Phillips claims that, while traveling in reverse during his shift, he unknowingly struck a "wood chip" with a wheel of the forklift. (D.E. 122 ¶¶ 6-7.) According to Phillips, the wood chip jammed the forklift's wheels, which caused the forklift to stop suddenly.

---

[1] The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance" with L.R. 56.1. *See Bordelon v. Chicago Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *accord, e.g., Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809 (7th Cir. 2005). Precedent acknowledges that it is a "reasonable judgment" that "consistent, 'bright-line' enforcement is essential"—not only in promoting compliance with the local rule, but also "to ensuring that [the] long-run aggregate benefits in efficiency" that LR 56.1 is intended to produce are realized for the system of justice in the Northern District of Illinois. *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (collecting cases); *accord, e.g., Midwest Imports v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995). In addition, the process established in LR 56.1 (and its predecessor, L.R. 12(M) and (N)), helps focus and narrow the factual disputes so the court is not attempting to guess at what fairly can be argued and inferred from an often substantial factual record; that dynamic helps to ensure that the summary judgment process best promotes fair results for all.

2

(*Id.* ¶¶ 5-7.) Phillips claims that the force of the sudden stop resulted in him being ejected from the forklift onto the floor through the uncovered opening in the back of the forklift. (*Id.* ¶¶ 5-7, 74.) Although the forklift had a "dead-man pedal" (D.E. 114 ¶ 11), which must be depressed for the forklift to be able to move (rendering it impossible, at least in theory, to have a pilotless, runaway forklift), the forklift's momentum, in Phillips's view, carried it over the lower portion of Phillips's right leg, breaking it. (*Id.* ¶ 14; D.E. 122 ¶¶ 4, 73-74, 78.) Raymond disputes Phillips's version of the accident. It maintains that the vehicle could not perform as Phillips claims and contends that the accident was caused by Phillips's misuse of the vehicle. (*See, e.g.*, D.E. 127 ¶ 6.) Ultimately, everyone acknowledges, doctors unfortunately had to amputate Phillips's leg below the knee. (D.E. 114 ¶¶ 13-14.)

Phillips filed a four-count civil action against Raymond in Cook County Circuit Court. (D.E. 1, Ex. A.) Counts One and Three assert that Raymond is strictly liable for Phillips's injury, while Counts Two and Four assert that Raymond was negligent in its maintenance and sale of the forklift. (*Id.*) Raymond removed this case from the Circuit Court of Cook County in April 1999 (D.E. 1), and this Court inherited the case in 2004. Removal was proper because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. (*Id.*; D.E. 114 ¶ 4.)

Plaintiff identified two putative experts who would testify on his behalf: John Sevart ("Sevart"), a mechanical engineer whose testimony has previously been excluded in this judicial district, which exclusion was affirmed by the Seventh Circuit,[2] and Dr. Y. King Liu ("Liu"), a professor of bioengineering. (D.E. 109 at 8, 14.) Defendant also identified two experts: Dr.

---

[2] *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 867 (7th Cir. 2001) (affirming exclusion of Sevart testimony in forklift case concerning subjects also at issue in this case); *see also id.* at 869-71 (identifying numerous problems and defects in the proffered Sevart testimony).

Catherine Ford Corrigan, a biomechanical engineer, and Dr. Edward Caulfield, a mechanical engineer. (*Id.* at 19, 23.) Both parties moved to exclude the other's putative experts. (D.E. 84, 94, 96.) On March 24, 2005, the Court granted Raymond's motion to exclude the testimony of Sevart (largely on the basis of the Seventh Circuit's analysis and criticism of Sevart's testimony in *Dhillon v. Crown Controls Corp.*, 269 F.3d 865 (7th Cir. 2001)), and denied Plaintiff's motion to exclude Corrigan and Caulfield. (D.E. 108.) In denying Defendant's motion to exclude Liu, the Court determined that Liu would be permitted to testify as to the mechanism of Phillips's injury. (*Id.*; D.E. 109 at 18.) However, the Court excluded Liu from testifying as to what would have been the nature of Phillips's injury had the forklift incorporated Sevart's proposed latching rear-door mechanism because Sevart's putative expert testimony was inadmissible. (*Id.* at 18-19.) Following the Court's ruling on the motions to exclude, Defendant moved for summary judgment, claiming that Phillips could not establish any of his claims on the record assembled, particularly given that he had no expert witness to testify as to causation and any alternative product design. (D.E. 113 at 1.)

II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999)

(citation omitted). The Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant. *See* Fed. R. Civ. P. 56(c); *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).[3]

The parties have briefed the case under Illinois substantive law, a conclusion that appears to be correct. In any event, precedent teaches that the Court can accept the parties' choice-of-law assessment and analyze the questions presented under Illinois substantive law. *See, e.g., Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000); *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995).

III. DISCUSSION

Plaintiff seeks recovery under four theories: two sounding in negligence and two in strict liability. (D.E. 1, Ex. A.) Defendant moves for summary judgment on all counts on the grounds that Plaintiff cannot prevail, on the record assembled, "without a design expert to testify that the Raymond Model 31i forklift was defective and unreasonably dangerous, and that its defective condition caused plaintiff's accident." (D.E. 113 at 1.)

A. Negligence

Plaintiff sets forth two negligence claims: (1) that the forklift was negligently designed and (2) that the forklift was negligently maintained. A plaintiff alleging negligence has the burden of proving: (1) the defendant owed plaintiff a duty of care; (2) the defendant breached the

---

[3] Because the Federal Rules of Civil Procedure apply to diversity cases unless such application would violate the Rules Enabling Act or the Constitution, *Hannah v. Plumer*, 380 U.S. 460 (1965), the federal rule concerning summary judgment, Fed. R. Civ. P. 56(c), governs when sitting in diversity. *See Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976) (per curiam); *Muller v. Synthes Corp.*, No. 99 C 1492, 2002 WL 460827, at *3 (N.D. Ill. Mar. 26, 2002) (collecting cases).

duty of care; and (3) the plaintiff's injury was proximately caused by the defendant's breach of duty. *See Cunis v. Brennan*, 308 N.E.2d 617, 618 (Ill. 1974); *accord, e.g., Klootwyk v. Daimler Chrysler Corp.*, No. 01 C 6127, 2003 WL 21038417, at *4 (N.D. Ill. May 7, 2003). "The duty to manufacture a 'reasonably' safe product does not require the safest design possible, nor one incapable of causing injury." *Baltus v. Weaver Div. of Kiddie & Co., Inc.*, 557 N.E.2d 580, 585 (Ill. App. Ct. 1990) (internal citations omitted). "Moreover, 'in determining whether a product is unreasonably dangerous, the focus should be placed on the product itself and not the availability of any additional safety devices.'" *Id.* (quoting *Fuller v. Fend-All Co.*, 388 N.E.2d 964, 967 (Ill. App. Ct. 1979)). Proximate cause encompasses the cause-in-fact and the legal cause of the injury. *See, e.g., Beretta v. City of Chicago*, 821 N.E.2d 1099, 1127 (Ill. 2004) (citation omitted).

Precedent reflects that a plaintiff who alleges that a product was negligently designed often must submit expert testimony concerning the product's design and an alternative design. *See, e.g., Klootwyk*, 2003 WL 21038417, at *3 (granting summary judgment where plaintiff did not offer expert testimony on alternative design, because "[i]n a case such as this one, Plaintiff needed to offer expert testimony to attest to the fact that the driver-side air bag was unreasonably dangerous, as this claim involves technical matters beyond the common knowledge and experience of jurors") (citing *Baltus*, 557 N.E.2d at 589-91); *Muller v. Synthes Corp.*, No. 99 C 1492, 2002 WL 460827, at *6 (N.D. Ill. Mar. 26, 2002) ("The question of the design parameters of a medical implant . . . is one that goes beyond the knowledge that the average lay person reasonably could be expected to possess. Accordingly, competent proof on this issue requires expert testimony. This requirement is often stated in product liability cases.") (collecting cases, including *Baltus*); *Baltus*, 557 N.E.2d at 588-89 ("Products liability actions . . . often involve

specialized knowledge or expertise outside the layman's knowledge. Manufacturing negligence resulting in an [allegedly] unreasonably dangerous product seems particularly appropriate for expert opinion"); *id.* at 589 (collecting Illinois cases and stating that "expert opinion usually is required to aid the jury in determining that the pertinent standard of care has been breached"); *id.* at 590 (teaching that, while expert testimony is not needed where the defect is obvious, such as when a folding chair collapses when someone sits on it, in that case, concerning design of a car jack feature, plaintiff could not "establish a breach of the standard of care . . . without expert testimony").

        1.    Negligent Design

Where a plaintiff claims negligent manufacture based on a design defect, the plaintiff must establish that the defendant deviated from the standard care that other manufacturers of the product followed at the time the product was designed, or show that the defendant knew or should have known, using ordinary care, that the product was unreasonably dangerous and failed to warn of the dangerous propensity. *See Muller*, 2002 WL 460827, at *7; *accord, e.g., Blue v. Envtl. Eng'g, Inc.*, 828 N.E.2d 1128, 1141 (Ill. 2005) (collecting cases). "[A] plaintiff raising a negligence claim must do more than simply allege a better design for the product; he must plead and prove evidence of a standard of care by which to measure a defendant's design and establish a deviation from that standard. *Blue,* 828 N.E.2d at 1141 (collecting cases); *accord, e.g., Klootwyk,* 2003 WL 21038417, at *4 (showing of negligent design requires proof of fault); *Baltus*, 557 N.E.2d at 831 ("Since negligence does not permit liability without fault, it is not enough to say that there may have been a better way to design the . . . [product], without giving evidence of a standard of care by which to measure . . . [the disputed] design and without

7

showing a deviation from that standard by evidence of record.").

A plaintiff can demonstrate that a manufacturer deviated from the standard of care by showing the availability and feasibility of an alternative design at the time of manufacture or that a design fails to conform to industry and/or government standards. *See, e.g., Carrizales v. Rheem Mfg. Co.*, 589 N.E.2d 569, 580 (Ill. App. Ct. 1991) (collecting cases); *Baltus*, 557 N.E.2d at 586. With respect to the industry/government standards analysis, the Court notes—echoing the Seventh Circuit's previous statement in affirming the exclusion of Raymond's proffered design defect expert, John B. Sevart, and its affirmance of the grant of summary judgment for the defendant in a forklift accident case quite similar to the instant case—that the Plaintiff here "could not point to even one forklift manufacturer that has installed rear doors for general application or even one regulatory body or standards organization that requires or recommends a rear door on forklift stand-up trucks. To the contrary, . . . Sevart [the proffered expert excluded in the instant case and in *Dhillon*] has twice tried to persuade the professionals on the American National Standards Institute ["ANSI"] committee to require a rear door; the committee has twice rejected the idea." *Dhillon*, 269 F.3d at 870-71.[4] As discussed above, expert opinion is typically

---

[4] *See also Berry v. Crown Equip. Corp.*, 108 F. Supp. 2d 743, 745 (E.D. Mich. 2000) (granting summary judgment to defendant forklift manufacturer after excluding Sevart as a putative design expert, and noting that "of the 77,000 stand-up forklifts manufactured by [defendant] Crown, only approximately 350 were built with doors of any kind, and only a handful of those remain in use today because all but one customer has removed the doors"); *id.* at 752 (noting the absence of any "government, industry or internal company standard . . . that either requires or recommends doors on stand-up riders"); *Tannebaum v. Yale Materials Holding Corp.*, 38 F. Supp. 2d 425, 432 (D. Md. 1999) (granting summary judgment on design defect claim concerning open-entry forklift and noting that "[s]uch forklifts comply with all relevant OSHA and ANSI requirements and there were not in 1983 and are not today any *established or recognized standards* requiring that a forklift be equipped with . . . [a] rear door as standard equipment, even though such products today are readily available. Indeed, it is undisputed that the addition of a rear door to the type of forklift involved here would necessarily increase its size so that its functional utility in

8

necessary to establish that the manufacturer breached the applicable standard of care, particularly where the design defect relates to a complex product, or a feature of a product which could offer arguable benefits and detriments—like a rear door on a forklift, and unlike the readily collapsing folding chair example given in *Baltus*. *See id.* 557 N.E.2d at 589; *accord, e.g., Klootwyk*, 2003 WL 2108417 at *3; *Muller*, 2002 WL 460827 at *8; *see also Salgado v. Gen'l Motors Corp.*, No. 93 C 1427, 1997 WL 106282, at *3 (N.D. Ill. Feb. 11, 1997), *aff'd*, 150 F.3d 735 (7th Cir. 1998).

Without Sevart's excluded testimony, Plaintiff has scant evidence concerning the applicable duty of care for forklift design. Plaintiff's response brief attempts to piece together statements from Defendant's experts along with industry documents to establish a standard of care. Specifically, Plaintiff contends that record reflects:

- The cost of installing a rear door is minimal. (D.E. 122 ¶¶ 12, 14.)

- A rear door would prevent exit or ejection from the forklift. (*Id.* ¶¶ 39, 41.)

- The supposed benefit of an open entry is overstated because jumping out of a forklift will still result in a "big time hurt." (*Id.* ¶ 43.)

- The supposed benefit of an open entry is overstated because timing studies show that an operator has sufficient time to exit a forklift even with a rear door installed. (*Id.* ¶¶ 46, 50-52.)

- The operator's manual does not instruct persons to jump if the forklift tips. (*Id.* ¶¶ 53-55.)

- The industry standard was to include operator guards and Raymond did not follow the industry standard. (D.E. 120-2 at 17.)

Plaintiff's attempt at patching together evidence to establish a standard of care falls short.

---

narrow-aisle environments would be measurably diminished. Most significantly, despite what appears to have been a vigorous campaign by Tannebaum's expert to persuade the professionals on the ANSI committee to do so, ANSI has *twice rejected the idea that a rear door be required as standard equipment on such forklifts*.") (emphases in original).

Two of these "facts" are unsupported by the record citation and thus are stricken pursuant to Local Rule 56.1. First, the claim that the cost of installing a rear door is minimal only refers to the cost of metal and does not include additional production costs or the social costs of enclosing the rear entry; on this latter point, the record evidence is that the social cost of installing a latching rear door would be substantial. (D.E. 127 ¶ 12). Second, the statement concerning a "big time hurt" is not supported by the record citation offered, which is not even included in Plaintiff's materials.[5] These statements thus cannot assist Plaintiff in establishing a standard of care. With respect to the evidence of an industry standard concerning operator guards, Defendant submitted an uncontradicted report from Dr. Caulfield that the Model 31i meets all applicable standards. (D.E. 115, Ex. D at 3.) In addition, it is indisputable that ANSI does not require a rear door and "no forklift manufacturer [has] installed rear doors for general application." (D.E. 128 at 14); *accord, e.g., Dhillon*, 269 F.3d at 870-71. Moreover, the Court has already determined in a previous opinion that Plaintiff's alleged evidence of an industry standard—largely in the form of a single patent application—is not persuasive. (D.E. 109 at 10-11.) As noted previously, "the existence of a single patent application . . . is not indicative of any meaningful acceptance within a relevant scientific or design community." (*Id.* at 10.) In addition, the cited trade materials do not distinguish between a rear post or guard and a rear door (*id.* at 11-12), nor do they show that

---

[5] Plaintiff's Rule 56.1 statement attributes this statement to Page 88 of Robert Rogers's deposition testimony, which was attached as Pl. Ex. 9. However, the attached deposition testimony ends at Page 86. (*See* D.E. 122, Ex. 9.) Given that Plaintiff attached twelve exhibits to his Rule 56.1 statement, in addition to repeatedly citing to a multi-volume set of materials submitted to the Court for Plaintiff's *Daubert* motions, the Court cannot be expected to search through all of the materials in order to correct citation errors. *See, e.g., Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 (7th Cir. 2004) ("Judges are not like pigs, hunting for truffles buried in briefs" or the record.). In addition, this is not an isolated error by Plaintiff; for example, Plaintiff initially submitted a transcript of Dr. Lewis's deposition that was missing every other page.

these were standard instead of optional features of the forklifts. This evidence also does not compare the number of manufacturers that included guards versus the number that did not, nor does it show their relative market share.[6]

Plaintiff may also prove negligent design by demonstrating "that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity." *Blue*, 828 N.E.2d at 1141. However, the defendant has no duty to warn if "the risk of harm is apparent to the foreseeable user, regardless of any superior knowledge on the part of the manufacturer." *Sollami v. Eaton*, 772 N.E.2d 215, 221 (Ill. 2002). In such instances, the open and obvious nature of the risk is considered the equivalent of an adequate warning. *See, e.g., id.* at 220-21.

Plaintiff's negligent warning theory is deficient for multiple, independent reasons. First, Plaintiff has never even proposed a warning that he suggests would be more appropriate than the warnings that Defendant actually gave, nor given any evidence of the standard of care in the industry concerning such warnings. These failings alone are fatal. *See, e.g., Dhillon*, 269 F.3d at 870 (affirming summary judgment for defendant manufacturer on failure-to-warn claim in forklift design case, after affirming exclusion of Phillips's excluded expert, Mr. Sevart, in that case, and stating that "Sevart has not designed or suggested to the court an alternative warning that would have been appropriate or tested its effectiveness"); *Bourelle v. Crown Equip. Co.*, 220 F.3d 532, 538 (7th Cir. 2000) (affirming summary judgment for defendant on failure-to-warn claim in forklift case, and noting that Plaintiff "failed to test (or even to draft) an alternative

---

[6] Plaintiff fails to explain why evidence or argument about whether the warnings should be ignored in a tip-over case is germane; this is not a tip-over case, and Plaintiff alleges that he was involuntarily ejected when he hit a wood chip.

warning").

Moreover, and independently, Plaintiff failed to allege or offer evidence that a different warning would have made any difference in his case. Plaintiff provides no evidence of proximate causation—*i.e.* that he would have read and followed a different, adequate warning or that such a warning would have prevented his injuries. Plaintiff never states that he would have changed how he operated the forklift had he received a different (presumably more effective) warning about the dangers posed by the open rear entry. Instead, Plaintiff contends that he was operating the forklift while standing properly within it (a contention that Defendant and its experts dispute, of course, but that dispute is resolved in Plaintiff's favor at this stage), and Plaintiff further contends that he was involuntarily ejected from the forklift when it hit a wood chip. Nothing about that theory suggests that Plaintiff would (or likely even could, at least on his account of events) have done anything differently had a different warning been provided.

In sum, Plaintiff has failed to establish a standard of care with respect to forklift warnings; has failed to suggest a different warning that would be adequate or better; and has failed to identify a warning that would have caused him to have acted differently or prevented the injury he suffered, allegedly as a result of the open rear entry feature. For all of these independent reasons, no rational jury could find Defendant liable on a failure to warn theory. *See, e.g., Dhillon*, 269 F.3d at 870; *Bourelle*, 220 F.3d at 538.

2. Negligent Maintenance

Plaintiff does not cite any case, much less one from Illinois, holding that a manufacturer has a duty to maintain a forklift once the product leaves its control. Furthermore, Plaintiff has not set forth any evidence suggesting that Defendant had a duty to maintain the forklift after it

left Defendant's control. Plaintiff does not offer any argument in support of the negligent maintenance claim, and it appears as though he has abandoned it.

In any event, given the lack of any evidence or authority offered in support of the claim, the Court determines that Plaintiff has failed to create a triable case concerning whether Defendant owed Plaintiff a duty of care with respect to the forklift's maintenance. Independently, Plaintiff has not offered any evidence that would permit a jury to determine the applicable standard of care with respect to forklift maintenance. Finally, Plaintiff has not offered any evidence that inadequate maintenance caused his injury; to the contrary, Plaintiff admitted that the forklift he was using was operating normally on the day of the accident. (D.E. 114 ¶ 11.) For each of these multiple, independent reasons, summary judgment is granted for Defendant with respect to any negligent maintenance claim. Given the insufficiency of Plaintiff's evidence, no rational jury could find in Plaintiff's favor on this count.

B.   Strict Liability

Under Illinois law, a manufacturer is strictly liable for an injury caused by an unreasonably dangerous condition of a product that existed at the time the product left the manufacturer's control. *See, e.g., Suvada v. White Motor Co.*, 210 N.E.2d 182, 187-188 (1965). A product may be unreasonably dangerous if it has a design defect, or if it is accompanied by an insufficient warning concerning the danger posed by use of the product. *See, e.g., Sollami*, 772 N.E.2d at 219.

Phillips argues that Raymond is strictly liable for his injuries because Raymond failed to provide sufficient warnings about the risks that the Model 31i posed to operators and because the Model 31i's unguarded rear-entry constitutes a design defect.

13

### 1. Failure to Warn

Just as a failure to warn may indicate that a product was negligently designed, a failure to warn of a product's dangerous propensities can make a product unreasonably dangerous. This duty is imposed only where the injury suffered by the plaintiff was foreseeable by the defendant. *See, e.g., Sollami*, 772 N.E.2d at 221. An injury is foreseeable if it is "objectively reasonable" to expect the user of the product to be injured in the manner in which the plaintiff was injured, "not merely what might conceivably occur." *Schultz v. Hennessy Indus., Inc.*, 584 N.E.2d 235, 242 (Ill. App. Ct. 1991) (citation omitted). In addition, this duty is not imposed if "the risk of harm is apparent to the foreseeable user, regardless of any superior knowledge on the part of the manufacturer." *Sollami*, 772 N.E.2d at 221. Finally, a failure to warn is the proximate cause of an injury only if the plaintiff demonstrates that he would have read and followed an adequate warning, and that the warning would have prevented his injuries. *See, e.g., Dhillon*, 269 F.3d at 870; *Bourelle*, 220 F.3d at 538.

As previously explained, Plaintiff's putative failure-to-warn claim suffers from multiple, independent defects. He has failed to suggest a different warning that would be adequate or even better; and has failed to identify a warning that would have caused him to have acted differently or would allegedly have prevented the injury he suffered. Under applicable precedent, a failure-to-warn claim, including one predicated on a strict liability theory, fails under such circumstances. *See Bourelle*, 220 F.3d at 538 (affirming summary judgment dismissal in forklift accident case on strict liability theory where Plaintiff "failed to test (or even to draft) an alternative warning"); *accord Dhillon*, 269 F.3d at 870-71 (applying *Bourelle* and affirming dismissal of summary judgment on failure to warn claim in forklift design case concerning

14

alleged tortious lack of rear door). Accordingly, Plaintiff's failure to warn/strict liability claim fails.

2. Design Defect

A manufacturer has a nondelegable duty to make products that are reasonably safe when used in their intended manner or in a reasonably foreseeable manner. *Baltus*, 557 N.E.2d at 585. "A manufacturer is not under a duty in strict liability to design a product which is totally incapable of injuring those who foreseeably come into contact with the product." *Kokoyachuk v. Aeroquip*, 526 N.E.2d 607, 610 (Ill. App. Ct. 1988). A design defect exists if: (1) the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner (the "consumer-expectations test"); or (2) the product's design proximately caused the injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs ("the risk-utility test"). *See, e.g., Blue*, 828 N.E.2d at 1138 (collecting cases). Plaintiff argues, and Defendant does not meaningfully challenge the notion, that under Illinois law, once the Plaintiff adduces evidence to create a triable case concerning proximate cause, then the defendant has the burden of demonstrating that the benefits of the product design outweigh the risks. *See* D.E. 120 at 8 (citing *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990)); *see also Wortel v. Somerset Indus., Inc.*, 770 N.E.2d 1211, 1218 (Ill. App. Ct. 2002).

Plaintiff alleges that his injury was caused by a design defect—the open rear entry on the forklift. Specifically, Plaintiff maintains that he involuntarily lost his balance and was ejected through the unguarded operator rear entrance when he hit a piece of wood while backing up. (D.E. 122 ¶ 6.) Plaintiff argues that the open rear entry caused his injury because a rear door

would have prevented his ejection from the forklift. (D.E. 122 ¶¶ 39, 41.) Defendant maintains that Plaintiff's version of how the events unfolded is not plausible, but if the jury were to credit Plaintiff's testimony, the narrow issue of proximate cause at least could potentially be satisfied, notwithstanding Plaintiff's lack of any design expert to testify concerning the standard by which to measure a defendant's design or to establish a deviation from that standard.

Defendant's summary judgment motion (at least its initial memorandum) failed to address a critical point that Defendant does not ultimately appear to dispute—namely, that Defendant, and not Plaintiff, bears the burden concerning the appropriateness of product design under the risk-utility test adopted by the Illinois Supreme Court. *See, e.g., Lamkin*, 563 N.E.2d at 457. Nor are Defendant's Rule 56.1 papers structured to address this burden with appropriate factual assertions. Defendant argued at length it its opening memorandum that Plaintiff's failure to adduce expert testimony concerning alternative design is disabling, but this position seems difficult to square with the teaching in Illinois law that as long as a plaintiff sets forth sufficient evidence concerning causation, "there is no requirement that a plaintiff [present] evidence of a feasible alternative design in order to survive summary judgment," at least under the risk-utility analysis. *Wortel*, 770 N.E.2d at 1224; *accord, e.g., Staecker v. Hitachi Seiki U.S.A., Inc.*, No. 95 C 0743, 1998 WL 30698, *6 (N.D. Ill. Jan 22, 1998) (refusing summary judgment for defendant and finding plaintiff not required to offer evidence of an alternative design under the Illinois risk-utility test).[7] While most plaintiffs offer an alternative design as part of their argument that the

---

[7] None of the cases Defendant cites specifically addresses the risk-utility test or the burden-shift Defendant appears to acknowledge as applying to Defendant in this setting. (*See, e.g.*, D.E. 113 at 6-7 (citing, *inter alia, Baltus v. Weaver Div. of Kiddie & Co., Inc.*, 557 N.E.2d 580, 590 (Ill. App. Ct. 1990)).)

defendant has not established that the challenged design's benefits outweigh its risks, a plaintiff can survive summary judgment without an alternative design if the defendant fails to carry its burden under the risk-utility test. *See id.; accord, e.g., Wortel*, 770 N.E.2d at 1219 (denying summary judgment when defendant failed to meet its burden under the risk-utility test and stating that the risk-utility test "increases the defendant's burden on summary judgment because the defendant must show that, by balancing the product's risk against its utility, the lack of a defect is plain and indisputable").

In this case, Defendant failed in its opening brief and Rule 56.1 statement to address its burden of proof under the risk-utility test announced in *Lamkin*. Although Defendant appears to argue that it has satisfied this burden of proof in its reply brief (*see* D.E. 128 at 12), this argument is flawed. First, and most importantly, Defendant's Rule 56.1 statement is not structured to address this subject with appropriate factual assertions made in the precise and supported format required by Rule 56.1. The Court will not allow Defendant to attempt to patch together the requisite factual presentation by referring to record materials addressed outside the appropriate Rule 56.1 format. *See, e.g., Bordelon*, 233 F.3d at 527 (affirming district court's requirement that litigant strictly follow and comply with Local Rule 56.1). Furthermore, and independently, Defendant's addressing of this issue for the first time in its reply brief is also improper, as Plaintiff has been deprived of the chance to rebut Defendant's arguments concerning its burden of proof and the factual record concerning this subject. *See, e.g., Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1117 (7th Cir. 1990) (collecting cases and holding that it is improper to advance argument for the first time in a reply brief). Accordingly, the Court respectfully denies Defendant's summary judgment motion concerning the issue of strict liability under the risk-

utility test. *See, e.g., Wortel*, 770 N.E.2d at at 1219; *Staecker*, 1998 WL 30698 at *6.

CONCLUSION

For the aforementioned reasons, the motion for summary judgment (D.E. 113) is granted in part and denied in part.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 4-25-06